IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No.:

Randall Wren,

      Plaintiff,

v.

McCandless Truck Center, LLC,

      Defendant

---

### COMPLAINT AND JURY DEMAND

---

Plaintiff Randall Wren, by and through his counsel, Baird Quinn LLC, and for this Complaint against Defendant McCandless Truck Center, LLC, states and alleges as follows:

### I.      **INTRODUCTION**

1.      This is an action to recover damages against Defendant McCandless Truck Center, LLC ("McCandless") for unlawful interference and retaliation against Plaintiff in violation of the Family and Medical Leave Act of 1993 ("FMLA"), 29 USC § 2601 *et seq.*

2.      After being employed as an IT Supervisor for McCandless for approximately 18 years, Mr. Wren was diagnosed with brain cancer.

1

Complaint and Jury Demand

3.      McCandless is an employer covered by the FMLA and Mr. Wren was entitled to FMLA leave at the time of his diagnosis and treatment.  Even though Mr. Wren applied for and was granted intermittent leave, McCandless arbitrarily changed his leave from intermittent to continuous without any prior consultation with Mr. Wren or his physician.  McCandless then terminated Mr. Wren before he was able to take the full twelve (12) weeks of leave to which he was entitled to under the FMLA, in order to discriminate and retaliate against Mr. Wren for taking FMLA leave.

4.      Mr. Wren is also an individual with a disability under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*  By engaging in the unlawful conduct described herein, McCandless also violated Mr. Wren's rights under the ADA. Mr. Wren is currently in the process of exhausting his administrative remedies under the ADA, and will amend his Complaint to add his ADA claims at the appropriate time.

5.      Given his terminal health condition, Mr. Wren will also ask that this case be expedited so he has the opportunity to see this case through to its conclusion.

## II.      PARTIES, JURISDICTION, AND VENUE

6.       Mr. Wren is, and was at all material times, a resident of the State of Colorado, residing at 4953 Valencia Street, Denver, CO  80238.

7.      Defendant McCandless is and was, at all times material hereto, a Colorado corporation with a business location at 16704 E. 32nd Avenue, Aurora, CO 80011.

2

Complaint and Jury Demand

8.      Plaintiff asserts claims under the FMLA, which provides jurisdiction over this action to this Court.  This Court also has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337, and 29 U.S.C. 617(a)(2).

9.      This   Court   has   personal   jurisdiction   over   Defendant   because, by  locating  and  operating  its  business  within  this  judicial  district,  Defendant  has sufficient  minimum  contacts  with  this  judicial  district  that  the  exercise  of  such jurisdiction  comports with judicial notions of fair play and substantial justice.

10.      Pursuant to 28 U.S.C. § 1391, venue is properly laid in this district because  Defendant conducts substantial, systematic, and continuous activity in this district, is subject to personal jurisdiction in this district, and because all of the acts underlying this lawsuit occurred in this district.

### III.      <u>FACTUAL ALLEGATIONS</u>

11.      Defendant McCandless is an International (Navistar Truck) and IC Bus dealer serving the states of Colorado and Wyoming.  McCandless has six (6) dealership locations, and sells and leases trucks, sells truck parts, and provides mechanic and body shop services.

12.      On or about March 4, 2002, McCandless hired Mr. Wren as IT Supervisor.

13.      Excluding vacations and leaves of absences, Mr. Wren worked full-time for Defendant.

14.     In the one-year period prior to mid-April 2020, Mr. Wren worked more than One Thousand Two Hundred Fifty (1,250) hours for Defendant.

15.     Over his eighteen (18) years of service to McCandless, Mr. Wren was a loyal employee and performed his job for Defendant in an exemplary manner.

16.     Defendant McCandless did not give Mr. Wren any unsatisfactory performance evaluations.

17.     Defendant McCandless did not take any disciplinary action against Mr. Wren during his many years of employment.

18.     In April 2020, Mr. Wren was diagnosed with brain cancer.

19.     Mr. Wren's physicians recommended that he undergo brain surgery within a few days of his diagnosis.

20.     Mr. Wren advised Defendant McCandless of his diagnosis and need to undergo surgery and other treatment regimens, including radiation and chemotherapy treatments.

21.     Mr. Wren asked Defendant McCandless that he be permitted to take three weeks of vacation to cover the surgery and his recovery from the surgery.

22.     Defendant McCandless approved Mr. Wren's request to take vacation to cover his surgery and recuperation from surgery.

23.     On or about April 16, 2020, Mr. Wren underwent a nine (9) hour surgery for his brain cancer.

24.     Mr. Wren's physicians advised him that he would be undergoing chemotherapy and radiation treatments after his surgery.

25.     Mr. Wren advised Defendant McCandless of the planned treatment regimen after his surgery.

26.     On or about May 5, 2020, Defendant McCandless gave Mr. Wren a Notice of Eligibility and Notice of Rights and Responsibilities attached hereto as Exhibit A.

27.     Defendant McCandless told Mr. Wren that he was eligible to take FMLA leave for his own serious health condition.

28.     In the Notice of Eligibility and Notice of Rights and Responsibilities, Defendant McCandless did not tell Mr. Wren that he would be required to use his sick or vacation leave as part of his FMLA leave.

29.     Around May 11, 2020, Mr. Wren began working remotely from home with approval from Defendant McCandless.

30.     On or about May 15, 2020, Mr. Wren provided Defendant McCandless with a Certification of Health Care Provider for Employee's Serious Health Condition attached hereto as Exhibit B.

31.     In the Certification of Health Care Provider form completed by Mr. Wren's physician, Dr. Denise Damek, wrote that Mr. Wren would need intermittent leave under the FMLA.

32.     Specifically, Dr. Damek estimated that Mr. Wren would need a flexible schedule for days related to ongoing treatment, and treatment related to side effects, for up to 8 hours per day, 1 to 2 days per week, from about May 12, 2020 to December 31, 2020.

33.     On or about May 28, 2020, Kevin Coleman, Chief Operating Officer of Defendant McCandless, told Mr. Wren that Defendant would be converting his FMLA leave from intermittent to continuous, effective May 29, 2020.

34.     In the May 28, 2020 letter, Mr. Coleman asserted that there were "many aspects of the IT Supervisor position that must be completed on-site and on a daily basis."

35.     Mr. Coleman also wrote that "the Health Care Certification completed by your physician states that you will not be able to work on site for the remainder of 2020." Yet, the Health Care Certification completed by Mr. Wren's physician says no such thing.

36.     Mr. Coleman withdrew Mr. Wren's remote work responsibilities effective May 29, 2020.

37.     Mr. Coleman wrote, "[i]t is in the best interests of the Company to place you on full time leave under the FMLA and relieve you of all remote work duties." Nothing was said in the letter about Mr. Wren's best interests.

38.     Neither Mr. Coleman nor anyone else at Defendant McCandless spoke with Mr. Wren about his need to be at work performing any job duties prior to the May 28, 2020 letter, or the consequences of him not being at work.

39.     Nor did Mr. Coleman have the courtesy to contact Mr. Wren by telephone to tell him that he was being placed, involuntarily, on continuous FMLA leave.

40.     At the time Defendant McCandless placed Mr. Wren on continuous FMLA leave and withdrew his remote work responsibilities, Defendant McCandless shut off Mr. Wren's access to the company's computer system.

41.     After receiving Mr. Coleman's letter, Mr. Wren called Mr. Coleman and asked whether he had been fired.

42.     Mr. Coleman responded by telling Mr. Wren that he would be permitted to return to work after his FMLA leave.

43.     As an enclosure with Mr. Coleman's letter, Defendant provided Mr. Wren with a Designation Notice, attached hereto as Exhibit C, and again confirmed that Mr. Wren's FMLA leave request was approved.

44.     However, the only FMLA leave request submitted by Mr. Wren was for intermittent FMLA leave, which was being denied by Defendant by virtue of its unilateral conversion of his FMLA leave from intermittent to continuous.

45.      In the Designation Notice, Defendant McCandless inserted a check on the line next to the statement: "Provided there is no deviation from your anticipated

7

Complaint and Jury Demand

leave schedule, the following number of hours, days, or weeks will be counted against your leave entitlement: 12 wks [weeks] you are required to provide status update every 2 wks".

46.     The Designation Notice did not provide Mr. Wren with the end date for his FMLA leave.

47.     Mr. Wren contacted Wanda Durkes, Human Resources Manager at Defendant, at least every two (2) weeks to update her on his status.

48.     On or about July 17 or 18, 2020, Mr. Wren spoke with Ms. Durkes and told her that he would be undergoing an MRI on August 3, 2020 and would speak with his physician about the MRI results on August 6, 2020, at which point he would see about getting a medical release to return to work.

49.     On August 3, 2020, Mr. Wren had the MRI.

50.     On or about August 5, 2020, Mr. Wren received correspondence from Mr. Coleman at Defendant McCandless, with the subject: Notice of Termination.

51.     In the letter, Defendant McCandless terminated Mr. Wren's employment, effective August 5, 2020, with no prior verbal discussion about the termination decision.

52.     Mr. Coleman wrote that Mr. Wren's FMLA leave ended on August 5, 2020.

53.     Mr. Coleman also wrote that "[y]ou cannot work onsite for the rest of the year and possibly into 2021."

54.     Mr. Coleman's statements identified in Paragraphs 35 and 53 are false.

55.     Before the August 5, 2020 letter, no one at Defendant McCandless had told Mr. Wren that his FMLA leave ended on August 5, 2020.

56.     As of August 5, 2020, Mr. Wren had not used twelve (12) weeks of FMLA leave.

57.     No one at Defendant McCandless called Mr. Wren to notify him of his termination; instead, Defendant McCandless chose to simply send Mr. Wren, an 18-year employee, a termination letter.

58.     Mr. Wren was devastated by the termination decision, and has suffered significant emotional distress as a result of Defendant McCandless' unlawful actions as alleged herein.

59.     As he was driving to the hospital to find out the results of his MRI on August 6, 2020, Mr. Wren contacted Defendant McCandless and indicated that he believed he could return to work.

60.     Defendant McCandless did not give Mr. Wren an opportunity to provide a release to return to work or otherwise discuss alternatives to termination, but instead stood by the termination decision.

61.     Defendant McCandless just wanted to get Mr. Wren off its payroll as quickly as possible and without regard to whether he could return to work.

## IV.   <u>STATEMENT OF CLAIMS</u>

62.     Mr. Wren re-alleges and incorporates by reference paragraphs 1-61.

Complaint and Jury Demand

63.     At all times relevant to this Complaint, Defendant was a covered employer under the Family and Medical Leave Act ("FMLA"), as it was engaged in an industry affecting commerce, and it employed fifty or more employees for each working day during each of twenty or more calendar workweeks in the current or preceding calendar year. 29 U.S.C. § 2611(4).

64.     Mr. Wren was covered under the FMLA and eligible for FMLA benefits as an employee with a serious health condition employed by Defendant for at least twelve months, and who had performed at least 1,250 hours of service during the previous twelve-month period. Id. § 2611(2).

65.     Under the FMLA, "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." Id. § 2615(a).

66.     The FMLA"s "prohibition against interference" prohibits an employer from discriminating or retaliating against an employee . . . for having exercised or attempted to exercise FMLA rights. . . ." 29 C.F.R. § 825.220(c).

67.     "[E]mployers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions, or disciplinary actions." Id.

68.     Employers who violate the FMLA "may be liable for compensation and benefits lost by reason of the violation, for other actual monetary losses sustained as a direct result of the violation, and for appropriate equitable or other relief, including

Complaint and Jury Demand

employment, reinstatement, promotion, or any other relief tailored to the harm suffered." Id. § 825.220(b); 29 U.S.C. § 2617.

69.     Defendant discriminated against Mr. Wren in violation of the FMLA when Defendant converted Mr. Wren's FMLA leave from intermittent to continuous, when Defendant failed to permit Mr. Wren to take the full twelve (12) weeks of FMLA leave, when Defendant failed to provide Mr. Wren with appropriate notice, when Defendant discharged Mr. Wren due to his FMLA leave for pretextual and false reasons, and when Defendant interfered with Mr. Wren's right to reinstatement and other rights under the FMLA.

70.     Defendant's actions were intentional, willful, and in reckless disregard of Mr. Wren's rights under the FMLA.

71.     Mr. Wren has suffered damages as a result of Defendant's unlawful actions.

## V.     PRAYER FOR RELIF

WHEREFORE, Plaintiff Randall Wren respectfully requests that this Court enter judgment in his favor and against Defendant McCandless, and grant:

A.     A declaratory judgment that Defendant intentionally discriminated against Mr. Wren in violation of the FMLA;

B.      An injunction ordering Defendant to reinstate Mr. Wren to his prior position

of employment with Defendant, with such retroactive pay and benefits as Mr. Wren

would have received had he not been terminated;

C.      Back pay with interest;

D.      Compensatory and

E.      Liquidated damages;

F.      Front pay; and

G.      Attorneys' Fees and Costs.

        **PLAINTIFF REQUESTS A JURY ON ALL MATTERS SO TRIABLE.**

DATED this 4th day of September, 2020.

        Respectfully submitted,

        Baird Quinn LLC


        BY: _/s/ J. Mark Baird_____
        J. Mark Baird, #22276
        Beth Doherty Quinn, #28016
        2036 East 17th Avenue
        Denver, Colorado 80206
        Telephone:  (303) 813-4500
        Facsimile:   (303) 813-4501
        Email:  jmb@bairdquinn.com
               bdq@bairdquinn.com

        ATTORNEYS FOR PLAINTIFF

Complaint and Jury Demand